# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-67 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINON |
| | ) | AND ORDER |
| ADAM G. TENNANT, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On December 1, 2023, defendant Adam G. Tennant ("defendant" or "Tennant") was sentenced to a custody term of 70 months, following his guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846; and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and (b)(1)(C). (Doc. No. 66 (Judgment); *see* Minutes of Proceedings [non-document], 12/01/2023; Doc. No. 51 (Plea Agreement); *see also* Doc. No. 35 (Superseding Indictment).) Now before the Court is Tennant's motion to reduce his sentence. (Doc. No. 75 (Motion).) Plaintiff United States of America (the "government") filed an opposition to the motion (Doc. No. 78 (Response)), and Tennant filed a supplement. (Doc. No. 79 (Supplement).)  For the reasons that follow, his motion, as supplemented, is denied.

## I.  LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Tennant does not identify the authority under which he bases his request for a sentence reduction. Applying a liberal construction to his motion, the Court believes Tennant may be seeking relief either under Amendment 821 to the United States Sentencing Guidelines or under the compassionate release statute. The Court shall address each avenue for relief in turn.

### A.  Amendment 821

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3553(a). *Dillon v. United States*,

560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)). Where a prisoner is ineligible for a sentence reduction based on the sentencing amendment, the Court need not proceed to the second step of evaluating whether the factors under 18 U.S.C. § 3553(a) justify reducing the sentence.

Part A of Amendment 821, which now appears in the guidelines at U.S.S.G. § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* U.S.S.G. § 1B1.10(e)(2) (Nov. 1, 2023).

At sentencing, the Court determined Tennant's base offense level to be 24. (*See also* Doc. No. 61 (Final Presentence Investigation Report ("PSR")), at 8[1] ¶ 35.) After the appropriate adjustments were applied—including a 2-level increase for obstruction, a 2-level increase for possession of a dangerous weapon, and a 3-level reduction for acceptance of responsibility— Tennant's total offense level became 22. (*See also id.* at 8–9 ¶¶ 36, 39–40, 42–44; Doc. No. 67 (Statement of Reasons), at 2, 4.)

Tennant had juvenile delinquent adjudications for robbery, attempted robbery, and escape, and adult convictions for aggravated robbery with a firearm specification, abduction, and having weapons while under a disability, which collectively scored 7 criminal history points. (*See also*

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Doc. No. 61, at 11–14 ¶¶ 52–54, 57–59.) Because Tennant committed the instant offenses while he was under a criminal justice sentence, the PSR writer added the then-applicable 2 status points under U.S.S.G. § 4A1.1(d). (*See also id.* at  14 ¶ 60.) At sentencing, however, the Court applied the new guideline in Amendment 821, Part A, and only added 1 status point. (*See* Doc. No. 67, at 1.) A total of 8 criminal history points resulted in a criminal history category IV.[2] (*See also id.* at 4.) With a total offense level of 22, and a criminal history category of IV, Tennant's guideline range was 63 to 78 months. (*See also id.*) As noted, the Court sentenced Tennant to custody term of 70 months. (*See* Doc. No. 66.)

Because Tennant already received the benefit of the Amendment at sentencing, his advisory guideline range would remain undisturbed if he were sentenced today, and he is ineligible for a further reduction under Part A.[3] To the extent Tennant sought a sentence reduction under Amendment 821, the motion is denied.

### B.  Compassionate Release

Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v*

---

[2] As it turns out, Tennant's criminal history category is the same, a criminal history category VI, whether he had 8 criminal history points or 9 criminal history points.

[3] Part B of Amendment 821 creates a new U.S.S.G. § 4C1.1 that permits a two-level reduction for certain offenders with zero criminal history points. Because Tennant was assessed 7 criminal history points, he is ineligible for relief under Part B as a "zero point" offender.

*Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, 18 U.S.C. § 1B1.13, was amended, effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." 18 U.S.C. § 1B1.13(b).

At the outset, the government correctly observes that there is no evidence before the Court that Tennant has exhausted his administrative remedies. (Doc. No. 78, at 7, 12.) Specifically, Tennant has provided no documentation demonstrating that he exhausted his appeal rights before the Bureau of Prisons ("BOP") that would warrant judicial review of that request. Moreover, the government represents that the BOP has no record of receiving any request from defendant. (*Id*. at 12.) As the party seeking a compassionate release, it is Tennant's burden to show that he is entitled to relief, including that he has properly exhausted his administrative remedies. *See United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release." (citations omitted)). In the absence of any evidence that Tennant has exhausted his administrative

remedies, the Court must deny Tennant compassionate release for this reason alone. *See Alam*, 960 F.3d at 834–35 (exhaustion requirement must be enforced when invoked).

But even if Tennant properly exhausted, he would still have to demonstrate that he was entitled to relief under the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the relevant BOP policy statement. The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended.

In conclusory fashion, Tennant represents that he has "family support and a stable home [he] is welcome in." (Doc. No. 75, at 3.) He also indicates—again without documentation or support—that he would attend the culinary training program offered by Edwins Leadership & Restaurant Institute, in Cleveland, Ohio, upon release from prison. (*Id.*) While family support, a stable home, and possible employment are relevant to a court's consideration of the § 3553(a) sentencing factors, they do not separately, or in combination, satisfy any of the enumerated categories of extraordinary and compelling reasons set forth in § 1B1.13(b).[4]

Further, Tennant reports that he is "still taking [his] medication regularly for [his] mental health and [is] doing so good [sic]!" (Doc. No. 75, at 2.) He does not, however, suggest (let alone establish) that his mental health condition qualifies under § 1B1.13(b)(1)—"Medical

---

[4] In his supplement, Tennant represents that he is concerned for his 16-year-old sister because she is living with her father, who has cancer. (Doc. No. 79, at 1.) Under 18 U.S.C. § 1B1.13(b)(3)—"Family Circumstances of the Defendant"—a defendant can show an extraordinary and compelling reason for release if he can establish the death or incapacitation of a caregiver for a sibling, so long as the defendant is the only available caregiver. § 1B1.13(b)(3)(D). While he represents that his sister's father is dying and that she has no one else to "look after her," he fails to support his representations with documentation or otherwise establish that his sister's only available caregiver is incapacitated. The Court also questions whether defendant would be an appropriate caregiver, given his violent criminal history.

Circumstances of the Defendant"—as an extraordinary and compelling reason.[5] Moreover, BOP medical records supplied by the government demonstrate that defendant is receiving adequate treatment for his anxiety and mental health disorder, including medication and counseling. (Doc. No. 78, at 13; *see* Doc. No. 78-1 (BOP Medical Records).) Indeed, by his own account, Tennant's mental health condition is well controlled. Further, Tennant's mental health challenges were known to the Court at the time of sentencing (*see* Doc. No. 61, at 17 ¶¶ 80–84), prompting the Court to recommend that Tennant participate in a mental health evaluation and counseling program in prison. (Doc. No. 66, at 2.) "[F]acts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) (citing *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)). In much the same way, Tennant's drug addiction, which defendant mentions in his supplement, cannot establish an extraordinary and compelling reason. Tennant's struggles with alcohol and drugs were known to the Court at the time of sentencing (*see* Doc. No. 61, at 18 ¶¶ 85–89), and the Court made allowances for them by recommending that Tennant participate in the Residential Drug Abuse Program ("RDAP") or some other appropriate treatment program. (Doc. No. 66, at 2.) Ultimately, the Court finds that Tennant has failed to demonstrate the existence of extraordinary and compelling reasons to justify early release, and his compassionate release motion must fail for this additional reason.

---

[5] The fourth enumerated category of extraordinary and compelling reasons—"Victim of Abuse"—involves circumstances where the prisoner, while in custody serving the term of imprisonment sought to be reduced, was the victim of either sexual abuse or physical abuse resulting in "serious bodily injury" that was committed by, or at the direction of, a correctional officer or BOP employee, or any other individual having custody or control over the prisoner. 18 U.S.C. § 1B1.13(b)(4). While Tennant claims, without elaboration, that the time he has spent in custody at USP Caanan is "the closest [he's] ever been to Hell in [his] life" (*see* Doc. No. 75, at 2), Tennant has failed to demonstrate that he has suffered the type of abuse that would qualify as an extraordinary and compelling reason under § 1B1.13(b)(4).

Of course, even if Tennant had exhausted his administrative remedies and cleared the initial hurdle of demonstrating an extraordinary and compelling reason, his request for compassionate release would still be denied because the relevant § 3553(a) sentencing factors do not support early release. The nature and the circumstances of the charged offenses were serious, as the trafficking of controlled substances is certainly dangerous. *See United States v. Stone*, 608 F.3d 939, 946 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offenses that, in itself, poses a danger to the community." (citations omitted)). His possession of a weapon while under a disability made the trafficking offenses all the more serious and dangerous. Moreover, as previously noted, despite his youth (age 23), Tennant already has an alarming criminal history that involves numerous firearms offenses and criminal acts of violence. Tennant's drug trafficking activities and criminal history continue to support the imposed sentence.

Tennant also has a history of non-compliance while in custody. Between June 9, 2022, and January 27, 2023—while he was held in pretrial detention on the charges in this case—defendant had four serious rules infractions: possession of homemade weapons, fighting with another inmate, refusing to comply with orders from correctional officers, and possession of drugs. (Doc. No. 61, at 5 ¶¶ 16–20.) Further, records from the Ohio Department of Rehabilitation and Correction ("ODRC") reveal that defendant was the subject of 33 misconduct reports while in state  custody— including offenses involving unauthorized possession, manufacture or consumption of drugs; disobedience of a direct order; possession of tattooing materials; possession of contraband; fighting; self-mutilation, including tattooing; and violation of various institutional rules. (*Id*. at 13– 14 ¶ 58.) Tennant notes that he has a clean BOP disciplinary record since his post-sentencing incarceration on the present federal charges, and the Court commends him for this good behavior,

but his recent past behavior in pretrial and state custody still gives the Court pause.

Additionally, on January 4, 2022, when officers attempted to conduct a traffic stop of the stolen vehicle defendant was driving, Tennant rammed the vehicle into a police patrol car and fled the scene, hitting additional cars before he ultimately crashed the vehicle and attempted to evade police on foot. (*Id*. at 7 ¶ 31.) Tennant's inability or unwillingness to conform his dangerous behavior or cooperate with law enforcement leads the Court to question whether he would abide by any conditions of early release.

The Court has also considered Tennant's stated family support, stable home, and possible employment opportunity. But after considering all of the § 3553(a) factors, the Court would find that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court would also find that defendant continues to pose a danger to the community.

## II.     CONCLUSION

For the foregoing reasons, the Court denies in its entirety defendant's motion (Doc. No. 75) to reduce his sentence.

**IT IS SO ORDERED**.

Dated: August 18, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

9